**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PATRICK CARNAHAN,    :    CIVIL ACTION
            :
    Claimant,    :
            :
    v.        :
            :
MICHAEL J. ASTRUE,    :    No. 11-7847
Commissioner of Social Security, :
            :
    Defendant.   :

## MEMORANDUM ON REQUEST FOR REVIEW

**Baylson, J.**                   **September 20, 2012**

    Claimant Patrick Carnahan seeks judicial review of a decision by the Commissioner of

the Social Security Administration ("the Commissioner") denying his application for

Supplemental Security Disability Insurance Benefits ("SSDI") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-

33, 1381-83(f).  After careful consideration of all the relevant facts and circumstances, and for

the reasons explained below, Carnahan's request for review of the July 2, 2010 decision of the

Administrative Law Judge ("ALJ") is DENIED.

I.   **Background**

   A.   **Procedural History**

    On June 1, 2009, and June 18, 2009, Carnahan filed applications for SSDI and SSI,

respectively.  (Tr. 68, 284.)  In both applications, he alleged disability beginning on October 30,

2008, due to valvular heart disease, hypertensive cardiovascular disease/hypertension, multiple

joint arthritis, degenerative disc disease, asthma, right knee impairment, hip pain, severe back pain, major depression, and high cholesterol.  (Id. 93, 288.)  The Social Security Administration denied both applications on October 15, 2009.  (Id. 28-32, 288-92.)  Carnahan then requested a hearing before an ALJ.  (Id. 33-35.)  A hearing was held before ALJ Susan A. Flynn on June 23, 2010, in Philadelphia, Pennsylvania.  (Id. 298.)  At the hearing, Carnahan was represented by counsel and testified on his own behalf.  (Id. 298-316.)  A vocational expert ("VE") also testified.  (Id. 316-21.)

On July 2, 2010, the ALJ denied Carnahan's applications for benefits.  (Id. 18-25.)  Carnahan subsequently sought review of the ALJ's decision before the Appeals Council.  (Id. 13-14.)  On October 25, 2011, the Appeals Council denied his appeal.  (Id. 6-9.)  The ALJ's decision thus stands as the final decision of the Commissioner.  See Sims v. Apfel, 530 U.S. 103, 107 (2000).

On December 27, 2011, Carnahan commenced the instant action by filing a Complaint (ECF No. 1) requesting review of the ALJ's decision.  On April 6, 2012, Carnahan filed a Brief and Statement of Issues in Support of Request for Review (ECF No. 6).  On May 7, 2012, the Commissioner filed a Response (ECF No. 7) in opposition thereto.  On May 17, 2012, Carnahan filed a Reply in further support of his request for review (ECF No. 8).

### B.     The ALJ Decision

In a written decision, the ALJ denied Carnahan's applications for benefits on the basis that he had the residual functional capacity (the "RFC") to perform past relevant work as a cashier/checker.  (Tr. 25.)  Initially, the ALJ found that Carnahan suffers from degenerative disc disease (DDD) of the lumbar spine and chronic obstructive pulmonary disease (COPD) –

2

medically determinable impairments that limit his ability to work and are, therefore, considered to be "severe" under the Social Security Regulations.  (Id. at 20.)  The ALJ also determined that Carnahan suffers from various additional impairments, including diabetes mellitus, osteoarthritis of the right knee, and status post myocardial infarction.  (Id.)  However, according to the ALJ, these impairments are "non-severe" under the Social Security Regulations because they result in minimal, if any, limitation on his ability to work.  (Id.)

After reviewing the evidence in the record, the ALJ determined that Carnahan "has the residual functional capacity to perform light work," subject to the following limitations:

> [H]e can lift and carry 20 pounds occasionally and ten pounds frequently, he can stand or walk for six hours out of an eight hour workday and sit for six hours out of an eight hour workday.  He can only occasionally climb stairs and ramps, and never climb ladders, ropes or scaffolds.  He cannot crawl, and only occasionally balance, stoop, kneel, or crouch.  He must avoid concentrated exposure to fumes, dust, odors, gases, and poor ventilation, and have only moderate exposure to temperature extremes.

(Id. at 21-22.)  In making this assessment, the ALJ found that Carnahan's medically determinable impairments could reasonably be expected to cause his alleged symptoms, which include, among other things, constant pain in his lower back, hip, knees, and ankles that lasts all day long and limits his ability to get up and move.  (Id. at 23.)  But the ALJ also found that Carnahan's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they are inconsistent with above RFC assessment.  (Id.)  To be sure, the ALJ went so far as to conclude that Carnahan's "description of the severity of his alleged pain has been so extreme as to appear implausible."  (Id.)

In reaching this conclusion, the ALJ considered Carnahan's daily activities, medical records, and the opinions of various physicians.  With respect to Carnahan's daily activities, the

3

ALJ determined that they were not limited to the extent one would expect in light of his subjective complaints. (Id.) Specifically, although Carnahan reported that he is in constant pain, he nevertheless testified that he is able to perform several activities of daily living, including household chores, shopping, walking to various locations to purchase necessities, preparing meals, dishwashing, and vacuuming. (Id.)

With respect to Carnahan's medical records concerning his DDD, the ALJ determined that they do not show degeneration of the lumbar spine to the extent expressed by Carnahan. In particular, the ALJ observed that a Magnetic Resonance Imaging ("MRI") of the lumbar spine taken on October 26, 2009 showed little to no disc herniation. (Id. at 23, 253.) In addition, an x-ray of the lumbar spine on the same date was unremarkable and normal. (Id. at 23, 255.) Moreover, an earlier MRI of the lumbar spine taken on June 4, 2009 showed only mild disc bulge with no herniation. (Id. at 23, 260.)

The ALJ also determined that Carnahan's medical records concerning his COPD only indicate a mild case of COPD. (Id. at 23.) Specifically, the ALJ observed that Ajay R. Pillai, M.D., a treating physician, reported on September 12, 2008, that Carnahan had stopped smoking and that he had clear lung sputum. (Id. at 23, 217.) Further, a pulmonary function test taken on July 30, 2009, indicated that, although Carnahan could not complete proper lung volume measurement, his forced vital capacity was normal, which would argue against any restrictive disorder, and he had only mild obstructive lung disease with reduced expiratory flow rates. (Id. at 23, 205.) Finally, Dr. Pillai diagnosed Carnahan with only mild COPD during a follow-up visit on September 11, 2009. (Id. at 23, 203.)

4

As for opinion evidence, the ALJ considered the following: (i) a handwritten note and a Multiple Impairment Questionnaire completed on July 8, 2008, and April 12, 2010, respectively, by Jon Fisher, D.O., a treating physician (id. at 135, 268-75); (ii) a Multiple Impairment Questionnaire completed on June 1, 2009, by Sanjay Gupta, M.D., a treating physician (id. at 186-93); (iii) a Physical Residual Functional Capacity Assessment completed on October 14, 2009, by Jerry Brenner, D.O., a state agency physician (id. at 230-36); and (iv) a Multiple Impairment Questionnaire completed on May 20, 2010, by Christian Fras, M.D., a treating physician (id. at 276-83).[1]  Although the opinion of Dr. Brenner, the state agency physician, conflicted with those of Carnahan's treating physicians, the ALJ ultimately found that his opinion was entitled to more weight than theirs in assessing Carnahan's RFC.  (Id. at 23-24.)

With respect to Dr. Fisher, the ALJ determined that his first medical source statement – a handwritten note, dated July 8, 2008 – was not entitled to any weight.  (Id. at 23.)  In that statement, Dr. Fisher concluded that Carnahan was disabled due to pain in the lumbar spine from degenerative joint disease, right knee pain, coronary artery disease, hypertension, dyslipidemia, asthma, COPD, shortness of breath, and being on multiple medications.[2]  (Id.)  The ALJ explained that the determination of whether a claimant is disabled is "an issue reserved for the Commissioner of Social Security to ascertain," and "[o]pinions by treating sources regarding the

_____

[1]In his brief, Carnahan refers to Drs. Fisher, Fras, and Gupta as "treating" sources. Although the record is not entirely clear as to whether all these doctors are indeed "treating" sources under the Social Security regulations, Defendant does not dispute Carnahan's characterization of them as such.  Accordingly, the Court will treat them as "treating" sources for purposes of Carnahan's request for review.

[2]The ALJ also noted that Dr. Fisher's medical source statement was not supported by any accompanying documentation.  (Tr. 23.)

issue of disability are not entitled to controlling weight or special significance."  (<u>Id.</u> at 23-24.)

Therefore, the ALJ gave Dr. Fisher's opinion "no consideration because it draws a conclusion

that is reserved for the Commissioner."  (<u>Id.</u> at 24.)

 The ALJ further determined that Dr. Fisher's Multiple Impairment Questionnaire,

completed on April 12, 2010, deserved "little weight."  (<u>Id.</u>)  Dr. Fisher concluded that, on a

scale of one to ten, Carnahan's pain level was at nine, and that he could only sit, stand, and walk

at most one hour out of an eight-hour workday, occasionally lift and carry at most five pounds,

and generally perform less than the full range of sedentary work.  (<u>Id.</u>)  According to the ALJ,

this opinion was "not consistent with the medical record," which as discussed above, showed

little deterioration of the lumbar spine and only mild COPD.  (<u>Id.</u> at 24.)

 For similar reasons, the ALJ also determined that Dr. Gupta's Multiple Impairment

Questionnaire, completed on June 1, 2009, deserved "little weight."  (<u>Id.</u>)  In Dr. Gupta's view,

Carnahan's MRIs indicated that he could only perform less than the full range of sedentary work

because of his low back pain.  (<u>Id.</u>)  However, the ALJ found that Dr. Gupta's opinion was

actually "inconsistent with [Carnahan's] MRIs which showed little degeneration in [his] lumbar

region."  (<u>Id.</u>)  The ALJ also found it to be "inconsistent with the longitudinal evidence on

record."  (<u>Id.</u>)

 Finally, the ALJ determined that Dr. Fras's Multiple Impairment Questionnaire,

completed on May 20, 2010, deserved "little weight."  (<u>Id.</u>)  Dr. Fras concluded that, on a scale

of one to ten, Carnahan's pain level was at eight, that he could only sit, stand, and walk for two

hours out of an eight-hour workday, that he could only occasionally lift and carry five to ten

pounds, that he had significant limitations in doing repetitive reaching, handling, fingering, or

lifting, and that his symptoms would get worse if sent to work.  (Id.)  According to the ALJ, Dr. Fras's conclusion deserved little weight because it was "not consistent with the medical records," it was "based on [Carnahan's] own subjective reports," and it "only recommend[ed] physical therapy as a course of treatment for [his] back pain instead of a more aggressive course of treatment including medication, epidural injections, or surgical interventions."  (Id.)

Unlike the foregoing opinions of Carnahan's treating physicians, the ALJ found that Dr. Brenner's Physical Residual Capacity Assessment completed on May 20, 2010, was entitled to "great weight."  (Id.)  In his assessment, Dr. Brenner concluded that Carnahan could perform light work with occasional postural limitations and no crawling.  (Id.)  The ALJ gave Dr. Brenner's opinion great weight because, in contrast to the opinions of Carnahan's treating physicians, it was "consistent with the medical evidence," and it was also "consistent with the records according to Dr. Brenner's narrative included within the assessment."  (Id.)  Accordingly, the ALJ determined that, along with "Carnahan's "exaggerated testimony" and his "diagnostic exams which show minor degeneration compared to [his] testimony," the RFC assessment was "supported by . . . the medical opinion of Dr. Brenner."  (Id.)

Based on the foregoing, the ALJ concluded that Carnahan is capable of performing past relevant work as a cashier/checker.   (Id. at 25.)  The ALJ noted that Carnahan testified that he worked as a cashier/checker at Pathmark, where he stood for six hours, bagging groceries and working the register.  (Id.)  In that job, he had to lift very little, but he pushed and pulled the groceries.  (Id.)  The ALJ also noted that the VE testified that the job of cashier/checker, as Carnahan described it, and as described in the Dictionary of Occupational Titles (the "DOT"), is a "light, semi-skilled job," which was "performed at a light level due to [Carnahan's] testimony

of standing."  (<u>Id.</u>)  The VE testified that Carnahan would be able to perform the requirements of

this job, either under his own description of the job or the description of the job in the DOT.

(<u>Id.</u>)

       In comparing Carnahan's RFC with the physical and mental demands of his past relevant

work as a cashier/checker, the ALJ concluded that he is able to perform this work as actually and

generally performed.  (<u>Id.</u>)  Therefore, according to the ALJ, Carnahan is not under a disability,

nor has he been since the alleged onset date.  (<u>Id.</u>)

## II.    Legal Standards

### A.    Jurisdiction

       The Social Security Act provides for judicial review by this Court of any "final decision

of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. §§ 405(g),

1383(c)(3).  A district court may enter a judgment "affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  <u>Id.</u>

### B.    Standard of Review

       On judicial review of the Commissioner's decision, the Commissioner's findings of fact,

"if supported by substantial evidence," are conclusive.  <u>Id.</u>  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Smith v.</u>

<u>Comm'r of Soc. Sec.</u>, 631 F.3d 632, 633 (3d Cir. 2010) (internal quotation marks omitted).  It is

a standard requiring "less than a preponderance of the evidence but more than a mere scintilla."

<u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004).

In reviewing the record for substantial evidence, however, the Court must "not weigh the evidence or substitute [its own] conclusions for those of the fact finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).

The Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C.     Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if the claimant is not suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities, the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is suffering from severe impairments that meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the RFC to meet the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Fifth, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform (considering his

9

RFC, age, education, and past relevant work experience), the claim is approved.  20 C.F.R. §§
404.1520(g), 416.920(g).

## III.   Carnahan's Contentions

Carnahan's principal contention is that the ALJ's RFC determination is not supported by
substantial evidence because she failed to properly evaluate the medical evidence in the record.
Specifically, Carnahan contends that the ALJ erred by crediting the opinion of Dr. Brenner, a
non-examining state agency physician, over the opinions of Carnahan's treating physicians.

In connection with this argument, Carnahan raises several related, subsidiary arguments.
Initially, Carnahan contends that the ALJ improperly substituted her own judgment for that of
Carnahan's treating physicians by independently reviewing and interpreting the objective medical
evidence.  In addition, Carnahan contends that the ALJ's reliance on Dr. Brenner's opinion was
improper because he was mistaken as to various facts and did not have the benefit of a complete
record.  Moreover, Carnahan contends that the ALJ did not give due weight to his subjective
complaints and failed to properly examine the effect of his obesity and knee impairment on his
ability to return to work.

The Court will address each of these contentions below.  However, because they relate to
various levels of the Court's analysis, the Court will consider them in no particular order.

## IV.   Discussion

In evaluating a disability claim, the ALJ must determine what weight to give the opinions
of treating, nontreating, and nonexamining sources by considering several factors.[3]  Solter v.

---

[3]A nontreating source is a physician, psychologist, or other acceptable medical source
who has examined the claimant but does not have, or did not have, an ongoing treatment
relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Opinions from nontreating

Comm'r of Soc. Sec., No. 09-2821, 2010 WL 3620213, at *7 (E.D. Pa. Aug. 6, 2010); see also 20

C.F.R. §§ 404.1527(d), 416.927(d).  Generally, "[t]reating physicians' reports should be

accorded great weight."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999).[4]  "An ALJ may

reject a treating physician's opinion outright only on the basis of contradictory medical evidence,

but may afford a treating physician's opinion more or less weight depending upon the extent to

which supporting explanations are provided."  Id.

 In determining the weight, if any, to accord the opinion of a medical source, an ALJ

should consider: "(1) the nature of the examining relationship; (2) the nature of the treating

relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the

record as a whole, and (5) the specialization of the physician offering the opinion."  Irelan v.

Barnhart, 82 F. App'x 66, 71 (3d Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927).

 An ALJ is "free to choose the medical opinion of one doctor over that of another."  Diaz

v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009)  If "the opinion of a treating physician

conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to

credit but 'cannot reject evidence for no reason or for the wrong reason.'"  Morales v. Apfel, 225

---

sources do not carry as much weight as treating source opinions, but are generally entitled to
more weight than nonexamining sources. See Solter v. Comm'r of Soc. Sec., No. 09-2821, 2010
WL 3620213, at *7 (E.D. Pa. Aug.6, 2010). A nonexamining source is a physician, psychologist,
or other acceptable medical source who has not examined the claimant but provides a medical or
other opinion. 20 C.F.R. §§ 404.1502, 416.902.

 [4]A treating physician's opinion is accorded controlling weight only if the opinion is
"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with other substantial evidence [in the] case record."  Smith v. Astrue, 359 F. App'x
313, 316 (3d Cir.2009) (quoting 20 C.F.R. §§ 404.1527(d)(2)) (alteration in original).  Here,
Carnahan does not contend that any of the opinions of his treating physicians is entitled to
controlling weight.

F.3d 310, 317 (3d Cir. 2000) (quoting <u>Plummer</u>, 186 F.3d at 429).  "The ALJ must consider all

the evidence and give some reason for discounting the evidence she rejects."  <u>Diaz</u>, 577 F.3d at

505-06 (quoting <u>Plummer</u>, 186 F.3d at 429).

 In this case, it is undisputed that there was conflicting medical opinion evidence in the

record.  Specifically, Dr. Brenner, a state agency physician, concluded that Carnahan could

perform light work subject to certain exceptions, while Carnahan's treating physicians – Drs.

Fisher, Gupta, and Fras – suggested that he could not perform even most sedentary work.

Ultimately, the ALJ determined that Dr. Brenner's opinion was entitled to great weight, and that

the opinions of Carnahan's treating physicians deserved little or no weight.  The Court will

evaluate the ALJ's treatment of each of these opinions below.

 **A.**  **State Agency Physician Opinion**

 In a Physical Residual Capacity Assessment completed on October 14, 2009, Dr. Brenner,

a state agency physician, concluded that Carnahan could perform light work with occasional

postural limitations and no crawling.  (Tr. 230-36.)  The ALJ gave Dr. Brenner's opinion great

weight because it was "consistent with the medical evidence," and it was also "consistent with

the records according to Dr. Brenner's narrative included within the assessment."  (<u>Id.</u> at 24.)

Accordingly, the ALJ determined that, along with "Carnahan's "exaggerated testimony" and his

"diagnostic exams which show minor degeneration compared to [his] testimony," the RFC

determination is "supported by . . . the medical opinion of Dr. Brenner."  (<u>Id.</u>)

 Recently, in <u>Chandler v. Commissioner of Social Security</u>, 667 F.3d 356 (3d Cir. 2012),

the Third Circuit determined that an ALJ was entitled to rely on a state physician's opinion in

rendering an RFC determination in similar circumstances to the instant case.  Chandler thus

provides useful guidance in analyzing the ALJ's treatment of Dr. Brenner's opinion.

     1.  Chandler v. Commissioner of Social Security

   In Chandler, the record contained numerous medical records describing treatments and

evaluations between January 2006 and May 2009, including several opinions by medical

professionals, regarding the claimant's alleged disability due to reflexive sympathetic dystrophy

("RSD").  667 F.3d at 359.  In July, 2008, a state agency medical consultant issued a Physical

Residual Functional Capacity Assessment after reviewing the claimant's records.  Id. at 360.   In

his report, the state consultant concluded that the claimant "retained the ability to occasionally

lift or carry ten pounds, climb stairs, balance, stoop, kneel, crouch, and crawl, and that she had no

manipulative, visual, communicative, or environmental limitations."  Id.  Subsequently, in April

2009, a nurse practitioner noted in a report that the claimant "cannot work and earn money in any

capacity due to her . . . [RSD] . . . and cannot sit, stand, or walk for greater than 30 minutes."  Id.

at 359-60 (alterations in original).  In June 2009, the ALJ denied the claimant's applications for

SSDI and SSI on the basis that she was not disabled because she had the RFC to perform

sedentary work with certain limitations and that jobs meeting those criteria were available.  Id. at

358.  After the ALJ's decision, the claimant submitted to the Appeals Council an additional

opinion from a physician agreeing with the nurse practitioner's April 2009 diagnosis.  Id. at 360.

The Appeals Council denied the claimant's request for review.  Id. at 358.

   The district court rejected the ALJ's decision on the ground that "there was no timely and

relevant opinion by a medical expert which support[ed] the [RFC] determination."  Id. at 360

(alterations in original).  According to the district court, the state consultant's report was no

longer useful to the ALJ's RFC determination because the state consultant had only reviewed the medical records through June 2008.  Id.

The Third Circuit reversed.  As the court explained, "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."  Id. at 361 (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)) (alterations in original).  Indeed, "[s]tate agent opinions merit significant consideration as well."  Id.  (citing SSR 96-6p) (emphasis added).  Therefore, the court concluded, "[c]ontrary to the District Court's view, the ALJ was entitled to rely on [the state consultant's] opinion."  Id.

In reaching this conclusion, the Third Circuit noted that the ALJ "did not merely rubber stamp [the state consultant's] RFC conclusion."  Id.  Rather, the ALJ found persuasive and incorporated into his RFC assessment the nurse practitioner's opinion that the claimant could not sit for more than thirty minutes at a time, and also added restrictions that the state consultant did not deem necessary.  Id. at 361-62.

The Third Circuit also found that the ALJ's explanation for crediting the opinion of the state consultant was adequate.  Id. at 362.  As the court recognized, the ALJ explained that he gave significant weight to the state consultant's opinion, that he considered and evaluated the nurse practitioner's opinion even though it purported to make the ultimate disability determination, which is reserved to the Commissioner, and that, other than her opinion, there were no other treating or examining medical source statements which addressed the claimant's physical capabilities.  Id.

14

Moreover, the Third Circuit determined that the new medical evidence generated after the state consultant's review did not undermine his opinion, even though he did not have the benefit of a complete record when he issued it. According to the court, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." Id. at 361. Indeed, "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Id.

Finally, the Third Circuit determined that the claimant's own subjective complaints of pain did not cast doubt on the ALJ's reliance on the state consultant's opinion. Id. at 363. As the court observed, the claimant "had reported extreme pain to doctors and claimed that she had to lie down most of the day, but she also testified that she managed to shop several times per week, cook dinner, care for her two children, and visit with friends." Id. Thus, the court concluded that the ALJ "had substantial evidence to conclude [the claimant] was not 'credible regarding the intensity and extent of her limitations, especially her need to lie down most of the day due to pain,' and was entitled to rely instead on [the state consultant's] opinion." Id.

## 2.    Application of Chandler

In this case, the Court concludes that the ALJ was entitled to rely on Dr. Brenner's opinion and that her decision to accord his opinion great weight is supported by substantial evidence. As in Chandler, the ALJ did not merely rubber stamp Dr. Brenner's opinion. Rather, the ALJ found it to be consistent with the objective medical evidence in the record and incorporated it into her RFC assessment. Specifically, the ALJ found that Dr. Brenner's opinion accorded with certain diagnostic tests in the record, including an MRI of the lumbar spine taken on October 26, 2009, which showed little to no disc herniation, an x-ray of the lumbar spine

15

taken on the same date, which was unremarkable and normal, and an earlier MRI of the lumbar

spine taken on June 4, 2009, which showed only mild disc bulge with no herniation.[5] (Tr. 23.)

These findings are adequately supported by the record.  (See, e.g., id. at 199, 260 (June 4, 2009

MRI showed "[m]ild degenerative changes," which had "minimally progressed from the previous

exam"); id. at 195, 255 (August 11, 2009 x-ray was "[w]ithin normal limits except slight

limitation of the flexion of uncertain clinical significance"); id. at 194, 253 (MRI on same date

showed "[n]o change in [] appearance . . . as compared with the prior study")).

        Additionally, as in Chandler, the ALJ added certain environmental limitations to

Carnahan's RFC assessment – namely, that he "must avoid concentrated exposure to fumes, dust

odors, gases, and poor ventilation, and have only moderated exposure to temperature extremes"

(id. at 22) – that Dr. Brenner did not find to be warranted (id. at 233).  That was the case even

though Dr. Brenner extensively reviewed numerous physical and pulmonary function tests

performed on Carnahan from 2006 through 2009 and found them to be generally "normal" with

mild limitations.  (Id. at 235.)

        Further, as in Chandler, the ALJ considered and evaluated conflicting medical evidence

in the record, including the opinions of Carnahan's treating physicians, some of which were

issued even after Dr. Brenner rendered his opinion.[6]  As discussed more fully below, the ALJ

---

        [5]In his report, Dr. Brenner appears to rely on some of these tests, though he does not refer
to them by date.  (See Tr. 235 (explaining that an x-ray of Carnahan's hips was "unremarkable,"
and an MRI of Carnahan's lumbar spine showed "[s]light degenerative disk disease of
questionable clinical significance").)

        [6]Indeed, the Multiple Impairment Questionnaire, completed by Dr. Fisher on April 12,
2010, as well as the Medical Source Statement, completed by Dr. Fras on May 20, 2010, were
each submitted after Dr. Brenner issued his opinion.

provided specific reasons – reasons which are adequately supported by the record – for

discounting the opinions of Carnahan's treating physicians in favor of Dr. Brenner's.

Last, as in <u>Chandler</u>, Carnahan's subjective complaints of pain do not undermine the

ALJ's reliance on Dr. Brenner's opinion.  Although "[a]n ALJ must give great weight to a

claimant's subjective testimony of the inability to perform even light or sedentary work when this

testimony is supported by competent medical evidence[,] . . . the ALJ can reject such claims if he

does not find them credible . . . ."  <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d

Cir. 1999).  The ALJ's decision must contain "specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make clear to

the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight."  SSR 96–7p, 1996 WL 374186, at *4.   The ALJ may

consider a claimant's daily activities, pain, and medication in evaluating the claimant's subjective

complaints for purposes of determining his or her residual functional capacity. 20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3).  A reviewing court should "ordinarily defer to an ALJ's

credibility determination because he or she has the opportunity at a hearing to assess a witness's

demeanor."  <u>Reefer v. Barnhart</u>, 326 F.3d 376, 380 (3d Cir. 2003).

Here, the ALJ determined that Carnahan's daily activities were not limited to the extent

one would expect in light of his subjective complaints.   (Tr. 23.)   As the ALJ observed, and as

the record indicates, although Carnahan reported that he is in constant pain, he nevertheless

stated that he is able to perform several activities of daily living, including shopping (<u>id.</u> at 105),

walking to various locations to purchase necessities (<u>id.</u> at 102, 105, 306-07), and household

chores, such as preparing meals, dishwashing, and vacuuming (<u>id.</u> at 103-04, 308-10).

17

Moreover, the ALJ observed that the medical records discussed above "did not show degeneration to the extent expressed by claimant." (Id. at 23.) Thus, as in <u>Chandler</u>, the ALJ had substantial evidence to conclude that Carnahan's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, and was entitled instead to rely on Dr. Brenner's opinion in making her RFC determination.[7]

Despite the Commissioner's repeated citation to <u>Chandler</u> in his briefing, Carnahan fails to address its implications on the ALJ's treatment of Dr. Brenner's opinion in this case. Instead, Carnahan attacks the substance of Dr. Brenner's opinion by contending that it relies on mistaken factual assumptions. Initially, Carnahan argues that Dr. Brenner failed to consider his right knee impairment. However, Dr. Brenner did consider Carnahan's right knee impairment in his evaluation. Indeed, Dr. Brenner specifically noted that the "Right knee MRI" showed "mild degenerative joint disease." (Tr. 235.)

Moreover, Carnahan argues that Dr. Brenner incorrectly noted that he does not use a device to ambulate. In support of this contention, Carnahan cites a Multiple Impairment Questionnaire completed by Dr. Fisher on April 12, 2010, which supposedly indicates that he uses a cane. (Tr. 268.) Dr. Brenner presumably did not take Carnahan's use of a cane into account for the simple reason that, at the time Dr. Brenner issued his report, there was no evidence in the record indicating that Carnahan even used a cane. To be sure, Dr. Fisher issued his opinion several months after Dr. Brenner's. As discussed above, <u>Chandler</u> itself rejected the

---

[7] For avoidance of doubt, Carnahan's contention that the ALJ's credibility determination is not accompanied by any explanation for its basis lacks merit. As discussed above, the ALJ clearly considered Carnahan's daily activities and the medical evidence in the record in determining that his subjective complaints were not entirely credible.

notion that intervening medical evidence introduced into the record between the time of state agency review and an ALJ's decision automatically renders a state agency opinion infirm. 667 F.3d at 361. Therefore, Dr. Brenner cannot be faulted for overlooking information that was not even in existence when he issued his report.[8]

Notwithstanding the foregoing, the Court recognizes that Chandler did not involve the exact circumstances as this case. Specifically, in Chandler, there were no treating or examining medical source statements addressing the claimant's physical capabilities that conflicted with the state agency opinion.[9] Here, by contrast, there are several opinions by Carnahan's treating physicians that conflict with the opinion issued by Dr. Brenner. However, for the reasons that follow, this distinction does not alter the Court's conclusion that the ALJ was entitled to rely on the opinion of Dr. Brenner and that her decision to accord his opinion great weight is supported by substantial evidence.

### B.      Opinions of Carnahan's Treating Physicians

Carnahan's treating physicians each submitted medical opinions that conflicted, at least to some extent, with the conclusion reached by Dr. Brenner that Carnahan could perform light work with certain limitations. Carnahan contends that the ALJ failed to properly weigh these opinions and, thus, erred in giving them little or no weight in her RFC determination.

---

[8]Carnahan also argues that Dr. Brenner failed to consider that he was in regular treatment with Dr. Gupta, a pain management specialist, specifically for his DDD. However, in his report, Dr. Brenner extensively reviewed Dr. Gupta's opinion and supporting documentation, noting that he had been "injecting various areas [of Carnahan's body]." (Tr. 236.)

[9]Indeed, in Chandler, although the record before the ALJ contained a note from a nurse practitioner indicating that claimant could not work, the only valid medical source statements under the Social Security regulations were introduced into the record after the ALJ's decision. Therefore, the district court was not permitted to consider them. 667 F.3d at 360.

The Court disagrees.  The ALJ properly considered the opinions of Carnahan's treating physicians in accordance with the Social Security regulations and enumerated specific reasons for discounting them.  In particular, the ALJ declined to credit the opinions of Carnahan's treating physicians because she found that they either (i) reached a conclusion reserved for the Commissioner or (ii) were inconsistent with, or otherwise undermined by, other evidence in the record.  The Court finds that the ALJ's treatment of the opinions of Carnahan's treating physicians is supported by substantial evidence and, therefore, she was entitled to credit Dr. Brenner's opinion over theirs.

1.      Conclusion Reserved for the Commissioner

As mentioned above, Dr. Fisher issued two medical opinions, the first of which – a handwritten note, dated July 8, 2008 – the ALJ gave "no consideration because it draws a conclusion that is reserved for the Commissioner." (Tr. 24.)  In that opinion, Dr. Fisher indicated that Carnahan was "disabled from any type of employment" due to pain in the lumbar spine from degenerative joint disease and right knee pain.  (Id. at 135.)  Dr. Fisher also noted that Carnahan has, among other things, coronary artery disease, hypertension, dyslipidemia, asthma, COPD, shortness of breath, and is on multiple medications.  (Id.)   The ALJ determined that Dr. Fisher's opinion was entitled to no weight because whether a claimant is disabled is "an issue reserved for the Commissioner of Social Security to ascertain."  (Id. at 23.)  According to the ALJ, "[o]pinions by treating sources regarding the issue of disability are not entitled to controlling weight or special significance."  (Id. at 23-24.)

The Court agrees with the ALJ's analysis.  Whether a claimant is "disabled" as defined by the Act is a decision which is reserved to the Commissioner.  Johnson v. Comm'r of Soc. Sec.,

529 F.3d 198, 203 n.2 (3d Cir. 2008); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "Although

the Commissioner considers opinions from treating and examining medical sources on this issue,

the final responsibility for the decision is reserved to the Commissioner."  Malloy v. Comm'r of

Soc. Sec., 306 F. App'x 761, 763 (3d Cir. 2009) (citing 20 C.F.R. §§ 404.1527(e)(1)-(3),

416.927(e)(1)-(3)).

      As the ALJ correctly noted, Dr. Fisher did not submit any accompanying documentation

in support of his July 8, 2008 opinion.  To be sure, the opinion is virtually limited to Dr. Fisher's

bald conclusion that Carnahan is disabled.  "This is not the sort of treating source medical

opinion entitled to any weight."  Johnson, 529 F.3d at 203 n.2.

      Accordingly, the ALJ's decision to accord Dr. Fisher's July 8, 2008 opinion no weight

was proper as a matter of law.

      2.      Consistency and Supportability

      The ALJ also determined that the remaining opinions of Carnahan's treating physicians

were entitled to little weight because they were inconsistent with, or otherwise undermined by,

the evidence in the record.   In a Multiple Impairment Questionnaire, completed on June 1, 2009,

Dr. Gupta concluded that Carnahan's MRI's indicated that he could only perform less than the

full range of sedentary work because of his low back pain.  (Tr. 186-93.)  Additionally, in a

Multiple Impairment Questionnaire, completed on April 12, 2010, Dr. Fisher concluded that, on

a scale of one to ten, Carnahan's pain level was at nine, that he could only sit, stand, and walk at

most one hour out of an eight-hour workday, that he could occasionally lift and carry at most five

pounds, and that he could generally perform less than the full range of sedentary work.  (Id. at

268-75.)  Moreover, in Multiple Impairment Questionnaire, completed on May 20, 2010, Dr.

Fras concluded that, on a scale of one to ten, Carnahan's pain level was at eight, that he could only sit, stand, and walk for two hours out of an eight-hour workday, that he could only occasionally lift and carry five to ten pounds, that he had significant limitations in doing repetitive reaching, handling, fingering, or lifting, and that his symptoms would get worse if sent to work.  (Id. at 276-83.)

The ALJ provided specific reasons for according these opinions little weight.  With respect to Dr. Gupta's opinion, the ALJ determined that it was  "inconsistent with [Carnahan's] MRIs which showed little degeneration in [his] lumbar spine" and it was also "inconsistent with the longitudinal evidence on record." (Id. at 24.)  Likewise, the ALJ concluded that Dr. Fisher's opinion  was "not consistent with the medical record," which showed only little degeneration of the lumbar spine.  (Id.)  And finally, the ALJ determined that Dr. Fras's opinion was "not consistent with the medical records," it was "based on [Carnahan's] own subjective reports," and it only recommend[ed] physical therapy as a course of treatment for [his] back pain instead of a more aggressive course of treatment including medication, epidural injections, or surgical interventions." (Id.)

The ALJ described in detail the particular diagnostic tests which did not support the opinions of Carnahan's treating physicians, including an MRI of the lumbar spine taken on October 26, 2009, which showed little to no disc herniation, an x-ray of the lumbar spine taken on the same date, which was unremarkable and normal, and an earlier MRI of the lumbar spine taken on June 4, 2009, which showed only mild disc bulge with no herniation.  (Id. at 23.)  As discussed above, the ALJ's observations are adequately supported by the record.

22

Contrary to Carnahan's contention, the ALJ did not substitute her own opinion of the diagnostic tests for those of Carnahan's treating physicians.  Although an ALJ is "not free to set his own expertise against that of a physician who presents competent evidence," Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985), that is not what the ALJ did here.  Instead, the ALJ relied on the opinion of Dr. Brenner to support her analysis of the medical evidence and, ultimately, her RFC determination.  See generally Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) (suggesting that an ALJ's RFC determination must be supported by the opinion of a physician).

In any event, the ALJ's observations of Carnahan's diagnostic tests were not her own interpretations of those tests.  Rather, they were derived from the observations by medical professionals of those tests in reports by Carnahan's treating physicians.  See Grogan v. Comm'r of Soc. Sec., 459 F. App'x 132, 137-38 (3d Cir. 2012) (holding that ALJ's decision to reject opinion of treating physician was proper where physician's own treatment records did not support her opinion and the record contained medical evidence contrary to her opinion).

An ALJ is required to consider whether a medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Courts within the Third Circuit have recognized that MRI and x-ray results can be considered by an ALJ is evaluating medical opinions.  See, e.g., Hudson v. Comm'r of Soc. Sec., 93 F. App'x 428, 431 (3d Cir. 2004) (ALJ did not err when it "considered [treating physician's] report but gave limited weight to its conclusions in light of the objective medical evidence, including MRI and x-ray results"); Preble v. Astrue, No. 3:10-cv-1896, 2012 WL 527058, at *3 (M.D. Pa. Feb.

23

16, 2012) (ALJ did not err in giving little weight to opinion of treating physician when ALJ

found, among other things, that "MRIs, EMGs, and a lumbar myelogram did not support a

finding of disability"); Barnhill v. Astrue, 794 F. Supp. 2d 503, 516 (D. Del. 2011) (ALJ did not

err in giving no weight treating physician's opinion that claimant's lower back pain would

prevent her from performing sedentary work when "MRI results [upon which physician relied]

did not reveal a more serious condition such as disc herniation or neural impingement").

Therefore, the ALJ did not err in determining that the opinions of Carnahan's treating physicians

were entitled to little weight by examining the diagnostic tests in the record.[10]

   Other evidence in the record also supports the ALJ's additional reasons for discounting

the opinions of Drs. Gupta and Fras.  For example, Dr. Brenner's opinion included a

comprehensive explanation for giving Dr. Gupta's opinion little weight.  In particular, Dr.

Brenner found that Dr. Gupta's observations were "not inconsistent with all of the medical and

non-medical evidence in the claims folder" and that he apparently "relied heavily on the

subjective report of symptoms and limitations provided by the claimant," even though "the

totality of the evidence does not support the claimant's subjective complaints."  (Tr. 236.)

Moreover, Dr. Brenner noted that Dr. Gupta appeared to be "injecting various areas without clear

explanation and does not even submit standard physical examination findings."  (Id.)  Ultimately,

Dr. Brenner concluded that Dr. Gupta's opinion is "an overestimate of the severity of the

---

[10]Notably, the opinions submitted by Drs. Fisher, Gupta, and Fras are largely forms that
required them to simply check boxes.  The Third Circuit has "previously found the credibility of
this type of opinion evidence to be suspect."  Grogan v. Comm'r of Soc. Sec., 459 F. App'x 132,
138 (3d Cir. 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports
in which a physician's obligation is only to check a box or fill in a blank are weak evidence at
best.")).

claimant's functional restrictions."  (Id.)  As discussed above, the ALJ found Dr. Brenner's report

to be consistent with the medical evidence and expressly incorporated his narrative into her

decision.  (Id. at 24.)

Further, the ALJ did not err in determining that Dr. Fras's opinion deserved little weight

because, in addition to being inconsistent with the medical evidence, it was based on Carnahan's

own subjective complaints and only recommended physical therapy as a course of treatment.  As

discussed above, the ALJ had substantial evidence to conclude that Carnahan's statements

concerning the intensity, persistence, and limiting effects of his symptoms were not entirely

credible.  (Tr. 23.)  Therefore, the ALJ was entitled to discount the opinion of Dr. Fras to the

extent it was based on those statements.

The ALJ also was entitled to discount Dr. Fras's opinion because it only recommended

physical therapy instead of a more aggressive course of treatment.  Although an ALJ may not

substitute his own lay opinion for that of a treating physician, Morales v. Apfel, 225 F.3d 310,

317 (3d Cir. 2000), the Social Security regulations call for the ALJ to consider a claimant's

treatment, including lack of treatment for allegedly disabling conditions, see Whack v. Astrue,

No. 06-cv-4917, 2008 WL 509210, at *7 (E.D. Pa. Feb. 26, 2008).  Here, the ALJ did not

substitute her opinion for the proper course of treatment.  Rather, the ALJ merely observed that

Dr. Fras did not recommend a course of treatment that corroborates the debilitating pain that

Carnahan alleges.  This was entirely proper.

The ALJ expressly noted that she "considered opinion evidence in accordance with the

requirements of 20 C.F.R. 404.1527 and 416.927." (Tr. 22.)  To the extent the ALJ erred in

failing to expressly address in her written decision all of the relevant factors listed in these

regulations,[11] any such error was harmless because, as the foregoing demonstrates, the ALJ's

decision to give the opinions of Carnahan's treating physicians little weight is supported by

substantial evidence.

     Nevertheless, Carnahan contends that this Court's prior decision in Soto v. Astrue, No.

08-cv-4701, 2009 WL 2327402 (E.D. Pa. July 28, 2009), requires a different result.  There, this

Court reversed the decision of an ALJ discounting the opinion of a treating physician because it

was "inconsistent with other credible medical opinion evidence and [was] also inconsistent with

the clinical findings on physical examination and diagnostic imaging studies . . . ." Id. at *6.

However, as this Court noted in Soto, the ALJ dismissed the treating physician's opinion with a

"single sentence."  Id.  To be sure, unlike in this case, the ALJ gave no indication of the objective

medical evidence she found to support her decision to dismiss the treating physician's opinion,

nor did she address in any detail the factors required by the regulations in evaluating opinion

evidence.  Therefore, Soto does not alter this Court's conclusion that the ALJ's treatment of the

opinions of Carnahan's treating physicians is supported by substantial evidence.

## C.    RFC Determination

     In this case, the ALJ made clear that her RFC determination was supported by "the

claimant's exaggerated testimony, the diagnostic exams which show minor degeneration

compared to [his] testimony, and the medical opinion of Dr. Brenner."  (Tr. 24.)  Having found

that the ALJ properly relied on Dr. Brenner's opinion and did not err in discounting Carnahan's

---

[11]As the ALJ's decision demonstrates, it cannot reasonably be argued that she failed to consider the consistency and supportability factors required by the Social Security regulations. Moreover, Carnahan does not make any specific argument as to how any purported failure by the ALJ to consider the nature of his treating relationships and the specialization of his treating physicians would impact the ALJ's RFC determination.

subjective complaints or the opinions of Carnahan's treating physicians, the Court has no trouble concluding that the ALJ's RFC determination is supported by substantial evidence for the reasons stated above.

Notwithstanding the foregoing, Carnahan contends that the ALJ nevertheless erred in her RFC determination because she did not properly take his right knee impairment and obesity into account.   This contention lacks merit.

With respect to Carnahan's right knee impairment, the ALJ acknowledged that he had osteoarthritis of the right knee, but that documentation indicated that his condition was "mild." (Tr. 20-21.)   The ALJ's determination is supported by the record.   (Id. at 163 (February 24, 2009 diagnosis by orthopedist indicating "right knee mild osteoarthritis without meniscal tear").   As discussed above, Dr. Brenner reached a similar conclusion after reviewing an MRI of Carnahan's right knee.   (Id. at 235.)   The ALJ adopted Dr. Brenner's exertional limitations and expressly incorporated his narrative into her decision.   (Id. at 24, 235.)   In addition, the ALJ provided detailed reasons for discounting Dr. Fisher's opinions, both of which acknowledged that Carnahan suffered from right knee pain.   (See id. at 135, 268.)   Because the ALJ did not find Carnahan's alleged limitations resulting from his right knee impairment to be credible, she did not err to the extent she excluded them from her RFC assessment.   See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007) ("Significantly, the ALJ need only include in the RFC those limitations which [s]he finds credible.").

As to Carnahan's obesity, he never alleged, either in his applications for benefits or at the ALJ hearing, that his obesity prevented him from working.   (Tr. 93, 298-321.)   Nor does he specify how his obesity would affect his ability to work.   See Rutherford v. Barnhart, 399 F.3d

546, 553 (3d Cir. 2005) (holding that, where claimant failed to specify how obesity would affect ALJ's analysis "beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers[,]" such a "generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments").   But in any event, Dr. Brenner considered Carnahan's weight – in addition to his right knee – in determining that he could perform a limited range of light work.   Therefore, even if the ALJ did not explicitly consider Carnahan's obesity in her RFC assessment, her adoption of Dr. Brenner's opinion is sufficient to uphold it.   See id. (concluding that "the ALJ's adoption of [physicians'] conclusions constitutes a satisfactory if indirect consideration of that condition" by the ALJ).

Accordingly, the ALJ did not err in rendering her RFC determination.

**V.     Conclusion**

For the foregoing reasons, and after careful consideration of all of the parties' arguments, Carnahan's request for review is DENIED and his Complaint is DISMISSED with prejudice.

An appropriate Order follows.

O:\CIVIL 11\11-7847 Carnahan v. Astrue\Memo re Request for Review.wpd

28